(C.D. 3821)

JEFFREY MARTIN, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 8, 1969)

*Francis A. Margalotti* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: This protest presents for decision the question of the proper rate of duty to be assessed against an importation of merchandise invoiced as "Superior Car Polishers." The customs officer at the port of entry classified the importation under item 386.50 of the Tariff Schedules of the United States (TSUS) as other cotton

articles not specially provided for, not ornamented, and accordingly assessed duty thereon at the rate of 20 per centum ad valorem.

It is the contention of plaintiff that this merchandise should be assessed with duty at the rate of 10 per centum ad valorem, pursuant to the provisions of item 385.30, TSUS, for cotton dustcloths, mop cloths and polishing cloths.

The respective provisions of TSUS, insofar as here pertinent read as follows:

Item 386.50

Articles not specially provided for, of textile materials:

\*      \*      \*      \*      \*      \*      \*

Other articles, not ornamented:

Of cotton:

Knit (* * *) _____      * * *
Pile or tufted construction:

\*      \*      \*      \*      \*      \*      \*

Other _____      20% ad val.

Item 385.30

Dust cloths, mop cloths, and polishing cloths, of cotton:
Pile construction_____      * * *
Other _____      10% ad val.

At the trial a sample of the imported merchandise was received in evidence, and for convenience of reference its three parts were separately marked. Plaintiff's exhibit 1 is the metal container in which the article is dispensed. Exhibit 2 is a forked plastic handle and exhibit 3 is a fringed strip of cotton cloth impregnated with a cleaning fluid designed to fit over the prongs of exhibit 2.

Also in evidence as illustrative exhibit A is an article similar to an assembly of exhibits 2 and 3; as illustrative exhibit B an auto polishing cloth; and as illustrative exhibit 3, a dust cloth.

Exhibit 3 appears to have been made in the following manner:   A strip of cloth, some 13½ inches in length and 4 inches in width is folded over lengthwise. A thick cord fringe is stitched along one side and extends therefrom about 2 inches. Then the two lengthwise edges of the fabric are sewn together. The opening thus formed permits the article to be slipped over the prongs of the handle, to which it is tied by a string at either end.

A witness for each of the parties gave testimony as to the use of the article as a cleaning and dusting device, and expressed his individual opinion as to the meaning of the term cloth. It serves no useful purpose to elaborate upon their testimony, however, for the reason that this is not a case of novel impression, and our views of what this article

is, and its proper classification were made known in the case of *Border Brokerage Co.* v. *United States*, 50 Cust. Ct. 115, C.D. 2397. There was involved an article virtually identical with the importation at bar, which had been classified in paragraph 923 of the Tariff Act of 1930, as a manufacture of cotton, not specially provided for, and was claimed to be a polishing cloth, dustcloth, or mop cloth, wholly or in chief value of cotton in paragraph 911(b) of said act.

It was our opinion that irrespective of whether or not the article was used for dusting, polishing, or mopping, it was not a cloth within the meaning of that term as used in the provision invoked by the plaintiff. By reason of its relevance our rationale is herein set forth in full.

> It is by now well established that, in the absence of commercial designation, which is not here involved, words used in a tariff statute are to be construed in accordance with their common meanings. *Armand Schwab & Co., Inc.,* v. *United States*, 32 CCPA 129, C.A.D. 296. It is equally well settled that common meaning is matter of law to be found by the court, and that, in making such finding, the court may draw upon common knowledge or resort to any relevant authority which may serve as a guide to judicial understanding. *Nix* v. *Hedden*, 149 U.S. 304; *United States* v. *Florea*, 25 CCPA 292, T.D. 49396.

> Seemingly, common knowledge alone would suffice in this instance to support a finding that the articles at bar are not within the purview of the language used in said paragraph 911(b). Each of the items enumerated in the provision is referred to by a double description, embracing both its use and its character. Insofar as use is concerned, the articles listed are such as are adapted for polishing, dusting, or mopping. Insofar as character is concerned, they are such as are of the nature of cloth.

> That the merchandise at bar fits the first portion of each description may be said to be supported by the article itself, as supplemented by the statements on the container. But that it does not respond to the second is almost too obvious to require comment. It seems clear that, in their imported condition, the subject articles are something more than cloths and that the correct term to employ in their description is "mops."

> Webster's New Collegiate Dictionary, 1961 edition, defines a "mop" as—

>> An implement for washing floors, or the like, made of a piece of cloth, or a collection of thrums, coarse yarn, or rags, *fastened to a handle.* * * * [Italics supplied.]

> The same authority defines "cloth" as—

>> 1. A pliable fabric woven, felted, or knitted from any filament; commonly, fabric of woven cotton, woolen, silk, rayon, or linen fiber, used for garments, etc.; also, a piece of such fabric. * * *

> If, in the designation of articles for polishing, dusting, or mopping, Congress had intended to include mops, *per se,* there

was no need for it to employ the expression "mop cloths," for, in that sense, the term is tautological. Yet, it may not be presumed that Congress has used superfluous or unnecessary language. *Fensterer & Voss (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 105, T.D. 40029. A mop is not cloth. It is something made from cloth. Consequently, a mop cloth is not a mop, but either an article used for the making of mops or one used in the manner of a mop.

That this comports with what Congress understood to be the meaning of the language of this paragraph is indicated by reference to the Summary of Tariff Information, 1929, on the Tariff Act of 1922, a volume prepared for the use of Congress in its consideration of the provisions of the Tariff Act of 1930. It is there stated (p. 1578):

> Polishing cloths and dust cloths are small squares of napped cotton cloth, usually flannel, used in the household for polishing and dusting furniture or other articles; they are also used in polishing automobile bodies, harness, etc. Polishing cloths made of pile fabrics, such as velveteen, are dutiable under paragraph 910 [Tariff Act of 1922]. Mop cloths are used for scrubbing and are usually either plain or leno woven; the filling is usually of cotton waste, jute, or other cheap material.

The competing provisions of TSUS which are here involved are couched in language carried over from the Tariff Act of 1930 without significant change, and we have not been persuaded by any other circumstance or argument that our conclusions in *Border Brokerage* should not be followed.

Based upon the foregoing considerations we find and hold that the subject merchandise is not a dustcloth, mop cloth or polishing cloth within the intendment of item 385.30, TSUS. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.