59 CCPA

**TEX MEX BRICK & IMPORT CO.,**
**Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5399.**

United States Court of Customs
and Patent Appeals.

Nov. 4, 1971.

Stein & Shostak, Los Angeles, Cal., attorneys of record, for appellant; Marjorie M. Shostak, Los Angeles, Cal., of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Martin L. Rothstein, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Third Division,[1] overruling, as to one of three entries, the claim of the importer that certain "Pink Velour" bricks manufactured in Mexico were ceramic bricks dutiable at 50¢ per 1,000 pieces under item 532.11 of the Tariff Schedules of the United States (TSUS). The protests relative to the other two entries were dismissed as premature, the court holding the liquidations thereof invalid by reason of the failure of the customs officials to give the importer notice of commingling of merchandise.

The bricks in issue were imported in three shipments from Mexico in December 1965 and January 1966. Samples of the importations were tested for density and porosity by the customs laboratory at New Orleans. On the basis of these tests, the bricks were found not be be ceramic articles, and were classified under item 523.91 of the TSUS as articles of mineral substances, not specially provided for, other than crude, not decorated, and assessed with duty thereunder at 15% ad valorem.

At trial the importer was allowed to amend its protest to claim that, in the event some of the merchandise was found not to be ceramic, the importations should not be considered commingled and dutiable at the highest rate of duty applicable to any part pursuant to General Headnote 7, TSUS, but rather they should be excepted from that treatment in accordance with paragraph (c) of that headnote.

The Customs Court held that the importer had not carried its burden of proving that the bricks at issue were ceramic. Relative to entry 4547, the customs laboratory reports indicated that the merchandise was composed completely of nonceramic articles and this protest was accordingly overruled. Relative to entries 4346 and 4739, the laboratory reports indicated that these entries contained both ceramic and nonceramic bricks. The court determined that as to these two entries no valid liquidation had taken place because the notice requirements of sec. 16.9 of the Customs Regulations (19 C.F.R. 16.9) applicable to commingled goods had not been complied with. Consequently, the protests were dismissed as premature.

After meticulously examining the record in this case, we find ourselves in substantial agreement with the conclusion reached and the judgment rendered by the court below. For reasons which will become apparent, we also see no need to enter upon an extensive discussion of the record and all the contentions asserted and projected in the briefs of counsel.

1. 305 F.Supp. 927, 63 Cust.Ct. 218, C.D. 3898 (1969).

■ Appellant contended below, and in substance asserts here, that the imported bricks are "ceramic brick" under TSUS item 532.11 since in common meaning that term includes all articles shaped from clay and hardened by firing at high temperatures. Under this theory all "common brick," "face brick," etc., including the bricks at bar, would be considered "ceramic brick" without regard to any further criteria. We agree with the court below that a tariff specification defining "ceramic brick" carries with it a presumption that not all brick is ceramic. Otherwise it would be but an idle and needless exercise in futility for Congress to deal specifically with "ceramic" brick. It is noted in particular that Headnote 2(a) to Part 2 of Schedule 5, TSUS, shows an intent to include as ceramic only those articles "hardened by such heat treatment that the body, if reheated to pyrometric cone 020 [approximately 1200° F.], would not become more dense, harder, or less porous." It is thus clear that only brick which has received the requisite heat treatment is to be considered ceramic brick for tariff classification purposes.

■ In that regard we agree with the Customs Court that appellant has failed to prove that the imported bricks are "ceramic brick" under TSUS item 532.-11, i. e., that they have received sufficient heat treatment—that they were not underfired. The record substantially supports the finding below that in essence appellant has proven no more than that the imported bricks were manufactured by firing in a tunnel kiln, were commercially acceptable moderate weather construction brick, and were used on a project in Houston, Texas. This does not show that these bricks received the heat treatment required by the tariff schedules in order to be classified as "ceramic brick." It is also noted that the only tests performed on the particular bricks involved in this protest were those done by the customs officials. No other tests were performed to show whether or not the imported bricks were ceramic. For reasons which will be mentioned later, it is not necessary to discuss these tests in detail; however, we think they were so inconclusive as to not indicate either way whether the bricks in question did or did not receive a sufficient heat treatment.

■ The only other relevant evidence of record on this issue relates to the manufacturer's general procedure of firing its bricks to cone 04 (approximately 1922° F.). This evidence is not sufficient to establish the condition of the specific bricks at bar. There was no evidence presented relating to the application of this general procedure to the specific bricks here involved, nor is there any evidence that even minimal standards of quality control and testing were maintained to assure that these bricks were fired to the degree alleged. Therefore, there can be no inference that the bricks at bar received an adequate heat treatment which would qualify them as "ceramic brick."

■ Appellant also contends that the tests performed by the customs officials on the imported bricks were unnecessary, not the proper ones, and were not properly performed. In addition, appellant alleges that the definition of "ceramic article" (Schedule 5, Part 2, Headnote 2(a)) which the customs officials applied is "void for vagueness." All of these arguments are primarily concerned with showing that the reasons advanced by the United States for classifying the imported bricks as mineral substances rather than ceramic articles are erroneous. Even if correct, they are not affirmative reasons for holding that the bricks are ceramic. Therefore, they need not be considered further by us since it is incumbent upon an importer to prove that the classification claimed is correct, and appellant has failed to do that in this case. Hayes-Sammons Chemical Co. v. United States, 55 CCPA 69, C.A.D. 935 (1968); Bob Stone Cordage Co. v. United States, 51 CCPA 60,

C.A.D. 838 (1964). In this regard we agree with the Customs Court that:

> Assuming, for purposes here, that the customs test was erroneous, a fact which is debatable, plaintiff still has not proved that the imported brick is "ceramic brick". An erroneous classification must stand when the claimed classification is not proved. United States v. Cody Manufacturing Co., Inc., et al., 44 CCPA 67, C.A.D. 639 (1957). Finding as we do, on this record, no affirmative showing that the imported brick is "ceramic brick" (under any definition), we need not reach or discuss plaintiff's third major point, that the TSUS definition of "ceramic article" is illegal and void, because it is too vague and indefinite to be uniformly applied, and has no clear meaning in the trade and commerce of the United States.

Finally, the record discloses that the customs officials found that entries 4346 and 4739 consisted of both ceramic and nonceramic bricks, and hence constituted "commingled" goods. Appellant contends that such importations were not dutiable at the higher rate in TSUS item 523.91 but at the claimed lower rate in TSUS item 532.11 under the exception in General Headnote 7(c). That headnote states in substance that under specified conditions the lower of two rates applicable to any part of commingled merchandise shall apply.

 Although this contention was raised below, the Customs Court refused to consider it and dismissed the protest as premature. This dismissal was based on the undisputed fact that there was no evidence that the customs officials gave any written notice that they had discovered commingling, as required by the regulations, and the entries were thus not legally liquidated. Since the Customs Court dismissed the protests in regard to entries 4346 and 4739 because of the illegal liquidation, and since neither party herein takes issue with that particular finding, we have no jurisdiction to go into the merits of appellant's con-

tention concerning the applicability of General Headnote 7(c). To do so would clearly be premature in view of the undisputed holding that such entries were not legally liquidated in the first place.

We are not persuaded of reversible error in the decision and judgment of the Customs Court overruling the protest as to entry No. 4547, and dismissing it as premature as to entry Nos. 4346 and 4739. We, accordingly, affirm that decision and judgment.

Affirmed.